# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| WSSA, LLC., | : | Civil. No. 1:18-CV-2392 |
| --- | --- | --- |
| Plaintiff | : | (Judge Jones) |
| v. | : | (Magistrate Judge Carlson) |
| ROBERT SAFRAN, | : | |
| Defendant | : | |

## MEMORANDUM ORDER

### I. INTRODUCTION

This breach of contract lawsuit comes before us for resolution of a discovery dispute. Briefly, the plaintiff, WSSA, is suing the defendant, Safran, alleging that Safran, acting through its agent Rock Commercial Real Estate, LLC, violated an exclusive agreement between the parties under which WSSA would market Safran's properties to the General Services Administration (GSA). (Doc. 1). Safran responded to this complaint, in part, by lodging a third-party joinder complaint against Rock. (Doc.14). Rock was later dismissed by the court as a third-party defendant in this case. (Doc.38).

WSSA then subpoenaed Rock, seeking records relating to this transaction. Rock produced some information but withheld approximately 198 pages of material asserting attorney-client and work product privileges. WSSA challenged

these privilege assertions, (Doc. 41), and this discovery dispute was referred to the undersigned. (Docs. 42, 43). We then convened a conference call with counsel where we informed the parties that we would decline to adopt any categorical approach to these privilege claims, but instead would conduct an in-camera review of these documents. (Doc. 45). We have now completed this review and for the reasons set forth below, conclude that the withheld documents are embraced by the privileges cited by Rock.

## II. **DISCUSSION**

Rulings regarding the proper scope of discovery are matters consigned to the court's discretion and judgment. A court's decisions regarding the conduct of discovery will be disturbed only upon a showing of abuse of that discretion. Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983). This far-reaching discretion also extends to rulings by United States Magistrate Judges on discovery matters. In this regard:

> District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes. See Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc., 174 F.R.D. 572, 585 (D.N.J. 1997). When a magistrate judge's decision involves a discretionary [discovery] matter . . ., "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." Saldi v. Paul Revere Life Ins. Co., 224 F.R.D. 169, 174 (E.D. Pa. 2004) (citing Scott Paper Co. v. United States, 943 F. Supp. 501, 502 (E.D. Pa. 1996)). Under the standard, a magistrate judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion." Kresefky v. Panasonic Commc'ns and Sys. Co., 169 F.R.D. 54, 64 (D.N.J. 1996); see also

> Hasbrouck v. BankAmerica Hous. Servs., 190 F.R.D. 42, 44-45 (N.D.N.Y. 1999) (holding that discovery rulings are reviewed under abuse of discretion standard rather than de novo standard); EEOC v. Mr. Gold, Inc., 223 F.R.D. 100, 102 (E.D.N.Y. 2004) (holding that a magistrate judge's resolution of discovery disputes deserves substantial deference and should be reversed only if there is an abuse of discretion).

Halsey v. Pfeiffer, No. 09-1138, 2010 WL 2735702, at *1 (D.N.J. Sept. 27, 2010).

In addressing the privilege claims made here by Rock we note that the United States Court of Appeals for the Third Circuit has summarized the purposes of, and distinctions between, the attorney-client privilege and the work-product doctrine, and the importance of limiting recognition of evidentiary privileges when necessary to achieve their purposes, as follows:

> Though they operate to protect information from discovery, the work-product doctrine and the attorney-client privilege serve different purposes. The purpose behind the attorney-client privilege is "'to encourage clients to make full disclosure of facts to counsel so that he may properly, competently, and ethically carry out his representation. The ultimate aim is to promote the proper administration of justice.'" In re Impounded, 241 F.3d 308, 316 (3d Cir. 2001) (quoting In re Grand Jury Proceedings, 604 F.2d 798, 802 (3d Cir. 1979)). The work-product doctrine, by contrast, "promotes the adversary system directly by protecting the confidentiality of papers prepared by or on behalf of attorneys in anticipation of litigation. Protecting attorneys' work product promotes the adversary system by enabling attorneys to prepare cases without fear that their work product will be used against their clients." Westinghouse Elec. Corp. v. Republic of the Phil., 951 F.2d 1414, 1428 (3d Cir. 1991) (citations omitted).

> Though evidentiary privileges have important purposes, their recognition may result in the withholding of relevant information and so may obstruct the search for truth. Indeed, the protections are effective only if they shield relevant evidence and thus they necessarily obstruct the search for the truth at a trial at which they are recognized either implicitly or explicitly. Consequently, privileges should be recognized only when necessary to achieve their respective purposes. See Fisher v. United States, 425 U.S. 391, 403 (1976).

In re Chevron Corp., 633 F.3d 153, 164 (3d Cir. 2011).

The attorney-client privilege is meant to facilitate "full and frank communication between attorneys and their clients." Wachtel v. Health Net, Inc., 482 F.3d 225, 231 (3d Cir. 2007). The privilege "recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." Upjohn v. United States 449 U.S. 383, 389 (1981). The privilege "applies to any communication that satisfies the following elements: it must be '(1) a communication (2) made between [the client and the attorney or his agents] (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client.'" In re Teleglobe Communications Corp., 493 F.3d 345, 359 (3d Cir. 2007) (quoting the Restatement (Third) of the Law Governing Lawyers § 68 (2000)). Thus, the privilege reaches "[c]onfidential disclosures by a client to an attorney made in order to obtain legal assistance." Fisher v. United States, 425 U.S. 391, 403 (1976); see also In re Ford Motor Co., 110 F.3d 954, 965 n.9 (3d Cir. 1997) (communication made by client

and an attorney are privileged if made "for the purpose of securing legal advice."); United States v. Amerada Hess Corp., 619 F.2d 980, 986 (3d Cir. 1980).

The privilege applies both to information that the client provides to the lawyer for purposes of obtaining legal advice, as well as to the advice the attorney furnishes to the client. To this end, the Supreme Court has explained that "the privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." Upjohn, 449 U.S. at 390. However, the privilege extends only to the disclosure of the communications and does not extend to disclosure of the underlying facts conveyed in those communications. Id. at 385.

While recognizing the value served by the privilege, courts must also be mindful that the privilege obstructs the truth-finding process and should therefore be "applied only where necessary to achieve its purpose." Wachtel, 482 F.3d at 231; see also Westinghouse Elec. Corp., 951 F.2d at 1423. Therefore, because the purpose of the privilege is to protect and promote the "dissemination of sound legal advice," it applies only to communication conveying advice that is legal in nature, as opposed to where the lawyer is providing non-legal, business advice. Wachtel, 482 F.2d at 231; see also Allendale Mut. Ins. Co. v. Bull Data Sys., Inc., 152 F.R.D. 132, 137 (N.D. Ill. 1993) (stating that the privilege is inapplicable where the legal advice is incidental to business advice); Hardy v. New York News, Inc.,

5

114 F.R.D. 633, 643 (S.D.N.Y. 1987) ("The attorney-client privilege is triggered only by a client's request for legal, as contrasted with business advice . . . .").

Federal courts are further required to assess the application of the privilege on a case-by-case basis. Thus, "Rule 501 [of the Federal Rules of Evidence] requires the federal courts, in determining the nature and scope of an evidentiary privilege, to engage in the sort of case-by-case analysis that is central to common-law adjudication." Id. at 230; see also Upjohn, 449 U.S. at 386, 396-97; In re Processed Egg Prods. Antitrust Litig., MDL No. 2002, 08-md-2002, 2011 U.S. Dist. LEXIS 120708, at *10-11 (E.D. Pa. Oct. 19, 2011). In addition, the party asserting the privilege bears the burden of providing that it applies to the communication at issue. In re Grand Jury, 603 F.2d 469, 474 (3d Cir. 1979).

The work-product doctrine, in turn, is embodied within Rule 26(b)(3) of the Federal Rules of Civil Procedure, which provides that "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial" unless otherwise discoverable or a party shows substantial need for the material. Fed. R. Civ. P. 26(b)(3). The doctrine recognizes that a lawyer requires a "certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." Hickman v. Taylor, 329 U.S. 495, 511 (1947).

The doctrine thus is intended "to protect material prepared by an attorney acting for his client in anticipation of litigation." United States v. Rockwell Int'l,

897 F.2d 1255, 1265 (3d Cir. 1990); see also United States v. Nobles, 422 U.S. 225, 238 (1975) ("At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case."). The doctrine does not extend to protect documents that were prepared "in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes.'" Martin v. Bally's Park Place Hotel & Casino, 983 F.2d 1252, 1260 (3d Cir.1993) (quoting Fed. R. Civ. P. 26(b)(3) advisory committee note).

In order for the doctrine to apply, Rule 26(b)(3) requires "that the material be prepared in anticipation of some litigation, not necessarily in anticipation of the particular litigation in which it is being sought." In re Ford Motor Co., 110 F.3d 954, 967 (3d Cir. 1997) (emphasis omitted). It is not necessary that litigation has been commenced or even threatened before a document can be found to have been prepared in anticipation of litigation. See In re Processed Egg Prods. Antitrust Litig., MDL No. 2002, 08-md-2002, 2011 U.S. Dist. LEXIS 120708, at *16 (E.D. Pa. Oct. 19, 2011) (citing Hydramar, Inc. v. Gen. Dynamics Corp., 115 F.R.D. 147, 150 n.3 (E.D. Pa. 1986)). However, documents will come within the scope of the work-product doctrine only where the documents were prepared primarily in anticipation of future litigation. See In re Diet Drugs Prods. Liability Litig., MDL

No. 1203, 2001 U.S. Dist. LEXIS 5494, 2001 WL 34133955, at *5 (E.D. Pa. Apr. 19, 2001).

Guided by these benchmarks and based upon our individualized review of these documents we conclude that Rock has properly withheld these disputed records as privileged. The records consist of emails by and between counsel and Rock officials. In the communications the participants discuss legal aspects of the transactions which lie at the heart of this litigation. In the course of these communications legal advice is solicited and received, and many of the communications appear to take place against the backdrop of threatened, impending or pending litigation. Moreover, many of the documents post-date September 26, 2018, the date upon which Rock was placed on notice of potential litigation, a fact which further bolsters their privileged status as records made in anticipation of litigation. Therefore, in our view the withheld documents are privileged and need not be disclosed.

An appropriate order follows.

## III. ORDER

Accordingly, for the reasons discussed above, IT IS HEREBY ORDERED THAT Rock's assertions of privilege are SUSTAINED and the request to compel production of these privileged documents is DENIED.

So ORDERED this 30th day of October 2019.

/s/ Martin C. Carlson
Martin C. Carlson
United States Magistrate Judge